Estate of Ava Ribblesdale, First National City Bank, Executor v. Commissioner.
Estate of Ribblesdale v. Commissioner
Docket No. 4295-62.
United States Tax Court
T.C. Memo 1964-177; 1964 Tax Ct. Memo LEXIS 160; 23 T.C.M. (CCH) 1041; T.C.M. (RIA) 64177; June 25, 1964
*160 Held, claim against decedent's estate was bona fide, for an adequate and full consideration, and is thus deductible under sec. 2053(a)(3), I.R.C. 1954. Paul R. Russell, 20 Exchange Place, New York, N. Y., and Joseph W. Drake, Jr., for the petitioner. Philip Shurman for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: Respondent has determined a deficiency in estate taxes of $546,988.27. The principal *161 issue for decision is whether 18 promissory notes aggregating $722,500, given by Ava Ribblesdale to her son, Vincent Astor, gave rise to a valid claim against her estate, so as to be deductible from her gross estate under section 2053(a)(3) of the 1954 Code. By amended petition, petitioner raises two collateral issues: (1) the deduction allowable by reason of the additional administrative expenses incurred by petitioner in the instant proceedings, and (2) the allowability of a credit against petitioner's Federal estate tax liability for additional New York State estate tax liability if we sustain respondent's determination that there is a deficiency. Findings of Fact Some of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. The petitioner, First National City Bank, successor to First National City Trust Company, formerly City Bank Farmers Trust Company, filed a Federal estate tax return on September 8, 1959, as executor of the Estate of Ava Ribblesdale (hereinafter referred to as decedent), who died on June 9, 1958. Decedent was a resident of New York City, and a citizen of the *162 United States at her death. In Schedule K of decedent's estate tax return, petitioner claimed a deduction in the amount of $722,500 as a debt of the decedent to: Vincent Astor, Rhinebeck, New York. Payee of a series of notes made by the decedent, Ava Ribblesdale. The notes totaling $722,500, were given for cash loaned to the decedent by Vincent Astor in the same amount. No payment thereon was made during the decedent's life. Under the terms of the loan agreement, interest was conditioned on events which never materialized. The notes have been paid and the obligations satisfied without interest. This item has been disallowed by respondent. Decedent was married to John Jacob Astor in 1891. There were two children from this marriage - a son, Vincent Astor, hereinafter referred to as Vincent, and a daughter. Decedent and John Jacob Astor were divorced in 1909, and in connection with the divorce, John Jacob Astor agreed to pay decedent $65,000 per year during her lifetime. John Jacob Astor died April 15, 1912, in the Titanic disaster. Under his will his residuary estate passed to his son, Vincent. On February 24, 1913, Vincent and decedent entered into an agreement whereby Vincent *163 agreed to pay decedent $120,000 per year as consideration for her release of the $65,000 per year obligation of John Jacob Astor's estate to her. This agreement was modified by an agreement of December 27, 1919, wherein the annual sum payable to decedent by Vincent was reduced to $60,000. In May, 1919, decedent had married Lord Ribblesdale, an English subject, and made her home in England until she returned to the United States in 1940. Lord Ribblesdale died in 1925. In London, on December 18, 1925, decedent executed an agreement whereby she released Vincent from his obligations to her under the 1913 and 1919 agreements. The payments which she had been receiving were subject to substantial English taxes. During the years 1932-1934, Vincent reported the following cash gifts to decedent in his gift tax returns: June 15, 1932
$ 7,700.00
June 25, 1933
25,000.00
August 22, 1933
23,187.50
November 29, 1933
8,537.50
April 16, 1934
25,412.50
June 22, 1934
25,000.00
December 17, 1934
250,000.00
On June 9, 1940, decedent returned to the United States and reacquired her United States citizenship. After her return she asked Vincent for financial assistance. Although *164 she had deposited in a custodial account with petitioner, securities worth over $500,000, and was receiving income of approximately $40,000 annually from a trust established by her mother, she claimed that she was in need of ready cash due to wartime financial restrictions imposed by England upon her investments in United Kingdom securities which prevented her from obtaining funds from that source. Vincent was considerably annoyed by decedent and the pressures which she brought to bear upon him at that time. Vincent's attorney discussed the matter with counsel retained by decedent in order to arrive at an accord. The latter raised a question as to the validity of the 1925 release signed by decedent. Vincent replied, through his attorney, that he would litigate the matter, if necessary, but was willing to make amounts available to decedent to help her through the period of what he viewed as temporary restrictions on her English assets. Finally, on Septebmer 20, 1941, the negotiations between counsel were concluded by the execution of an agreement between decedent and Vincent in which they agreed, in order to avoid further controversy and the delay and expense incident to litigation, *165 that he would make loans of up to $45,000 to her annually upon her request in return for which she was to deliver to him her notes promising to repay the loans. Repayment could be made at any time during decedent's lifetime, and if not so made, would "be an obligation and charge" upon decedent's estate. The loans were to bear interest at the rate of one percent per annum, not commencing until substantially all of decedent's securities became subject to her disposal, and only if the rate of exchange for pounds sterling was not less than $3.50 at that time. This interest provision was never applied, since the pound sterling had been devalued to less than the agreed rate. Pursuant to this agreement, the following annual payments were made by Vincent to decedent, for which he received her promissory notes: Dates
Amounts
September 20, 1941
$ 90,000
May 21, 1942
45,000
May 21, 1943
22,500
May 16, 1944
22,500
May 10, 1945
22,500
May 9, 1946
40,000
June 5, 1947
40,000
May 6, 1948
40,000
June 2, 1949
30,000
May 22, 1950
10,000
April 17, 1951
45,000
May 8, 1952
45,000
May 6, 1953
45,000
May 19, 1954
45,000
May 28, 1955
45,000
April 23, 1956
45,000
April 24, 1957
45,000
April 22, 1958
45,000
Total
$722,500
*166 During the years that Vincent made these advances to decedent, she had substantial amounts of securities in her custodial account. In addition to the approximately $500,000 of securities which she deposited in early 1941, she delivered to the petitioner United Kingdom stocks and bonds which had been purchased for approximately 268,000 pounds sterling during the period 1940 to 1947. During the period 1945 to 1950, decedent received approximately $35,000 annually from these investments, which were liquidated in 1951 and 1952 by the custodian, who reinvested the proceeds. At the date of decedent's death, June 9, 1958, substantially all of her securities were held in the custodial account; the market value thereof was in excess of $3,000,000. Decedent's income after taxes for the years 1953 to 1957, inclusive, and her estimated income after taxes for 1958 was as follows: Income After
Year
Taxes
1953
$68,000
1954
80,940
1955
79,990
1956
95,250
1957
98,130
1958 (estimated)
99,500
The terms of the 1941 agreement were carefully observed by decedent and Vincent. Each year decedent gave notice, through her attorney, of the amount which she elected to borrow, *167 and forwarded her note for that amount to Vincent. After decedent's death in 1958, payment of the $722,500 was demanded by Vincent through his attorney-in-fact and, on the advice of counsel, the principal amount of the claim was allowed and paid by decedent's executor, without interest, to Vincent's estate, he having died in the interim. In her will, prepared in 1956, decedent left the bulk of her estate to her daughter's children. She took into account the debt owing to Vincent, and left him only a silver soup tureen, two Chinese vases, and the sum of $25,000, "as a souvenir". The promissory notes of decedent, which evidenced the advances made to her by Vincent, gave rise to valid claims against decedent's estate. Opinion Petitioner contends that decedent's promissory notes, which evidenced the advances made by Vincent to decedent, gave rise to a valid claim against decedent's estate under section 2053(a)(3) of the 1954 Code [1]
*168 Respondent contends that the 1941 agreement between decedent and Vincent was not intended by them to create a true debtor-creditor relationship; that the advances were made by Vincent to restrict decedent's spending; that the advances were gifts arising from the filial devotion of one of the world's richest men to his mother. We cannot agree with the respondent's conclusion. While intra-family transactions must be given special scrutiny, see Jos. N. Neel Co., 22 T.C. 1083, 1090 (1954), where the substance of such transactions accords with their form, we do not disregard the form in which they are cast. We are satisfied that the 1941 agreement created a bona fide debt of decedent to Vincent, notwithstanding respondent's arguments that it was a sham. Respondent urges that the advances made by Vincent were not for full and adequate consideration, in that the interest rate provided was not substantial and the security given by decedent might have been insufficient to reimburse Vincent. We are aware of no requirement that a loan, in order to be bona fide, must require the payment of a rate of interest similar to the rates of a commercial lender. Certainly Vincent's sense *169 of filial devotion may have been part of his reason for making the advances in question, but the record indicates that his relations with decedent were not the most cordial and that he was quite annoyed with her requests. The bona fides of a loan are primarily established by the intention of the parties that repayment will be made pursuant to the terms of the agreement. Cf. Foresun, Inc., 41 T.C. 706 (1964), on appeal C.A. 6, April 20, 1964. We believe that the advances were made by Vincent with the expectation that he would be repaid by decedent, either during her lifetime or from her estate. The agreement was so drafted; and payment was in fact made by the executor of her estate, on the advice of counsel that the estate was liable for repayment. We do not believe that the advances were intended by the parties to be gifts. Vincent's gifts to decedent during 1932-1934, and his assumption of his father's estate's obligation to decedent, do not persuade us otherwise. We are similarly unpersuaded by respondent's contention that Vincent did not have any "real security", since decedent might have, through bad investments or by gift, reduced her estate to a point where Vincent's *170 loans could not have been repaid. Decedent had a substantial amount of assets, the bulk of which were in a custodial account, managed by a responsible corporate fiduciary. There is no indication in the record before us of facts which might cause Vincent any substantial concern as to the possibility of not being repaid. Respondent's suggestion, that because of his wealth Vincent would not be concerned with enforcing the 1941 agreement, is without support in the record. Decedent continued to borrow funds after her English assets were released and while she had substantial assets of her own upon which she could draw. Respondent urges that this indicates that such borrowings were shams since she did not "need" the money she received from Vincent. While there is some question as to whether she did actually "need" this money, the record before us indicates that she believed that her expenditures were such that these borrowings were advisable. Since the record indicates to us that she intended to have her estate repay these amounts, it is not for us to say that she could have financed her expenditures by invading the corpus of her custodial account and that therefore the continued borrowings *171 show that the advances were not bona fide loans. Respondent seeks to connect the 1925 release with the 1941 loan and argues that decedent would not have relinquished her claim for $60,000 annually, in an arm's-length transaction, in return for "a mere loan". The record does not show, however, that Vincent entered into the 1941 agreement because decedent had released him of the earlier obligation. Although decedent's counsel suggested in 1941 that the 1925 release was invalid and that decedent might attempt to have it set aside, we have no indication in the record before us that there were any grounds for such action. The agreement appears on its face to be valid, and Vincent's counsel advised decedent that Vincent was prepared to litigate its validity. Even if there had been a possibility of invalidating the agreement, we cannot say that decedent did not receive full and adequate consideration from the 1941 agreement, in the form of loans to enable her to live in the fashion to which she was accustomed, while her assets were frozen in England. This was a contingency unforeseen in 1925, and we find no basis for connecting the two transactions. Cf. Commissioner v. Court Holding Co., 324 U.S. 331 (1945). *172 The record before us does not indicate why decedent released Vincent of his obligation in 1925, and we decline to infer that the release was conditioned upon a promise by Vincent to make future gifts to decedent. In order to reflect items not contested in the petition, and to allow petitioner to present its claim for additional administrative expenses incurred in the instant proceeding, Decision will be entered under Rule 50. Footnotes
1. SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES. (a) General Rule. - For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts - * * *
(3) for claims against the estate, and * * *
(c) Limitations. - (1) Limitations Applicable to Subsections (a) and (b). - (A) Consideration for Claims. - The deduction allowed by this section in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth: * * *↩